Andrew C. Emrich
Joanna R. Vilos
HOLLAND & HART LLP
2515 Warren Avenue, Suite 450
P. O. Box 1347
Cheyenne, WY 82003
307/778-4200
307/778-8175

ATTORNEYS FOR PETITIONER

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

MAY 1 5 2008

Stephan Harris, Clerk
Cheyenne

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| SESQUI MINING, LLC | ) |
| Petitioner, | ) ) ) Case No. 08CV 127B |
| v. | ) ) |
| UNITED STATES DEPARTMENT OF THE INTERIOR, | ) ) ) ) |
| Respondent. | ) ) |

### PETITION FOR REVIEW OF FINAL AGENCY ACTION

Sesqui Mining, LLC, through its attorneys, HOLLAND & HART LLP, hereby petitions this Court for review of an Order by the United States Department of the Interior, Office of Hearings and Appeals, Interior Board of Land Appeals (IBLA) affirming the Bureau of Land Management's (BLM) denial of Sesqui's application to renew its federal sodium leases. Attached as Exhibit A is a copy of the referenced Order.

1.      On February 3, 2006, Sesqui submitted its application for renewal of its four federal sodium leases to the Wyoming State BLM office. BLM denied Sesqui's application for renewal by letter dated November 30, 2006. Sesqui filed a timely notice of appeal with the IBLA on December 28, 2006. The IBLA entered its Order affirming BLM's decision on March 26, 2008.

2.      The IBLA acted arbitrarily and capriciously in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2), by sustaining BLM's denial of Sesqui's application in reliance on an invalid legislative rule, by failing to provide a reasoned basis for its decision, and by acting contrary to BLM's decision regarding a similarly situated lessee. *See* 5 U.S.C. §§ 551(4), 553, 706(2). The IBLA's Order also contravenes the Mineral Leasing Act, 30 U.S.C. § 262, and its implementing regulations.

3.      The IBLA's Order constitutes final agency action subject to appellate review by the District Court. *See* 43 C.F.R. 4.403; 5 U.S.C. § 704; *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1580 (10th Cir. 1994).

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 5 U.S.C. §§ 701-706, FED. R. APP. P. 15, and U.S.D.C.L.R. 83.7.2.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e), in that the Respondent is a department of the United States government, the actions complained of relate to public lands located in the District of Wyoming, and a substantial part of the

events or omissions giving rise to the claim occurred in the District of Wyoming, including the underlying decision by the Wyoming State BLM Director to deny Sesqui's application for lease renewal.

WHEREFORE, Sesqui respectfully requests that this Court:

1. Declare that the Respondent acted in contravention of the Administrative Procedure Act in affirming the decision to deny Sesqui's application for renewal of its federal leases;

2. Set aside and vacate Respondent's denial of Sesqui's application;

3. Remand the matter to BLM for reconsideration of Sesqui's application according to the proper legal standards and factual circumstances;

4. Award Sesqui all its costs and attorneys fees; and

5. Grant Sesqui such other relief as the Court deems just and reasonable.

Respectfully submitted this 15th day of May 2008.

_____
Andrew C. Emrich
Joanna R. Vilos
HOLLAND & HART LLP
2515 Warren Avenue, Suite 450
P.O. Box 1347
Cheyenne, Wyoming 82003-1347
(307) 778-4200
(307) 778-8175 Fax
acemrich@hollandhart.com
jvilos@hollandhart.com

**ATTORNEYS FOR PETITIONER**

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2008, a true and correct copy of the foregoing **Petition for Review** was filed and served by certified mail upon the following:

Hon. Michael B. Mukasey
Attorney General
United States Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

Mr. Kelly Rankin, Esq.
United States Attorney
2120 Capitol Avenue, Suite 4000
P.O. Box 668
Cheyenne, WY 82001

Mr. Lance Wenger, Esq.
Office of the Solicitor
Rocky Mountain Region
United States Department of the Interior
755 Parfet Street, Suite 151
Lakewood, CO 80215

Hon. Dirk Kempthorne
Secretary of the Interior
United States Department of the Interior
1849 C Street, N.W.
Washington, D.C. 20240

United States Department of the Interior
Board of Land Appeals
Office of Hearings and Appeals
801 North Quincy Street, Suite 300
Arlington, VA 22203

_[signature]_

3870161_3.DOC



United States Department of the Interior

OFFICE OF HEARINGS AND APPEALS
Interior Board of Land Appeals
801 N. Quincy St. Suite 300
Arlington, VA 22203

703 235 3750                                    703 235 8349 (fax)

March 26, 2008

| | | |
|---|---|---|
| IBLA 2007-72 | ) | WYW079653, *et al.* |
| | ) | |
| SESQUI MINING, INC. | ) | Sodium Lease Renewal Application |
| | ) | |
| | ) | Decision Affirmed |

### ORDER

Sesqui Mining, Inc. (Sesqui), has appealed from a November 30, 2006, decision of the Wyoming State Office, Bureau of Land Management (BLM), rejecting its application to renew four Federal sodium leases (WYW079653, WYW081579, WYW77103, and WYW77104). BLM rejected Sesqui's sodium lease renewal application because Sesqui had not met the diligence requirement embodied in Section 14(c) of the leases. For the reasons stated below, we affirm BLM's decision.

### BACKGROUND

In November 1990, April 1991, and June 1992, BLM received expressions of interest in obtaining competitive sodium leases for lands within the Known Sodium Leasing Area (KSLA) in the Green River Basin (GRB) region of Wyoming. As a result, BLM scheduled a competitive sodium lease sale for January 19, 1993. Effective September 1992, an exploration license was issued for 14 sections within the KSLA. Also in 1992, BLM received renewal applications for approximately 40 Federal sodium leases set to expire in calendar year 1993. This activity prompted a review of the lease terms and conditions to be attached to new and renewed Federal sodium leases in the GRB.

The competitive sodium lease sale scheduled for January 19, 1993, was postponed. BLM held a public meeting on January 14, 1993, in Rock Springs, Wyoming, to solicit comments concerning two primary issues, *i.e.*, (1) a proposed royalty rate increase and (2) the potential need for a due diligence requirement for Federal sodium leases. The pubic was allowed until February 15, 1993, to submit written comments. The Wyoming State Office, BLM, constituted an analysis team to evaluate the comments received and to prepare an analysis for use by the Wyoming State Director, BLM, in arriving at a decision concerning the royalty rate and the diligence requirement issues.

**EXHIBIT A**

IBLA 2007-72

In June 1993, the analysis team completed its study, entitled *Sodium Royalty Rate and Diligent Development Analysis (SRRDDA),*[1] which addressed, *inter alia,* "if a diligence requirement is necessary to assure that the public's resources in the GRB is not being held for reasons other than development."[2] *SRRDDA,* Ex. 1 to BLM's Answer, at 1. The *SRRDDA* recommended that a notice of due diligence requirement be attached to all new and renewed sodium leases within Wyoming. The *SRRDDA* stated that including such a provision in new and renewed sodium leases would "advise[] lessees that if a lease is not in compliance with the due diligence requirement at the end of the renewal period, the lease will not be renewed." *SRRDDA* at 88. The *SRRDDA* included as Figure 1 a model provision setting forth the terms of the due diligence requirement to be included in new and renewed sodium leases in Wyoming. *Id.* at 89.

On February 22, 1996, Bob Armstrong, Assistant Secretary–Land and Minerals Management, issued a Memorandum to the Wyoming State Director, BLM (Armstrong Memorandum), addressing, *inter alia,* "what requirements, if any, should be included in order to encourage the diligent development of leased sodium deposits." Armstrong Memorandum at 1. Based upon the analysis and recommendations of the *SRRDDA,* the Assistant Secretary enunciated the following policy applicable to new and renewed sodium leases in the GRB:

> [I]t is the policy of the Department of the Interior that all sodium leases hereafter issued or renewed shall include a provision requiring rejection of an application for renewal of a sodium lease if, at the end of its then current term, sodium is not being produced in paying quantities from the lease or the BLM-approved contiguous mining block in which the lease is included.
>
> It is the responsibility of BLM's authorized officers to act in conformance with these policies when exercising their delegated authorities in issuing and renewing sodium leases in the Green River Basin in Wyoming.

Armstrong Memorandum at 3-4.

---

[1] For the members of the analysis team and the methodology it employed in reviewing and addressing the comments, *see SRRDDA* at 5-6.

[2] The *SRRDDA* also addressed concerns related to the appropriate royalty rate for new and renewed sodium leases in the GRB. For the *SRRDDA's* consideration of and recommendations as to royalty rates to be applied to new and renewed sodium leases, *see SRRDDA* at 65-69. Given our disposition of Sesqui's appeal, we need not further address the royalty rate issue.

With regard to the need for a due diligence requirement, the Assistant Secretary endorsed the recommendation of the *SRRDDA* that it be included in new and renewed sodium leases as "necessary to ensure conservation and to promote the wise development of the resource, and is fully consistent with the policies underlying [section 32 of] the Mineral Leasing Act [(MLA), 30 U.S.C. § 189 (2000)]."[3] *Id.* at 2. He explained:

> This diligence provision will be included in new sodium leases when issued and in pre-existing sodium leases at the time of lease renewal. It will require BLM thereafter to reject an application for renewal of a lease if sodium is not being produced in paying quantities from the lease or a BLM-approved contiguous mining block in which its lease is included by the end of the lease's then current term.

*Id.*

The Assistant Secretary set forth the terms of a due diligence provision, patterned on Figure 1 to the *SRRDDA*, that was required as part of all new and renewed sodium leases, as follows:

> (__)(a) The authorized officer will reject an application for renewal of this lease if, at the end of the lessee's current term, sodium is not being produced in paying quantities from:
> (i) This lease; or
> (ii) The contiguous mining block in which this lease is included.
> (b) For the purposes of this provision:
> (i) The "contiguous mining block" is an area approved by the authorized officer, which includes lands covered by this lease and which may include lands covered by other federal and/or non-federal sodium leases, each of which must be accessible using standard mining practices from at least one adjacent lease within such area; and
> (ii) "Sodium is not being produced in paying quantities" when the gross value of sodium compounds and other related products produced from this lease or the contiguous mining block at the point of shipment to market does not yield a return in excess of all direct and indirect operating costs allocable to their production.

*Id.*, Attachment A.

---

[3] Section 32 of the MLA authorizes the Secretary "to do any and all things necessary to carry out and accomplish the purposes of" the MLA. 30 U.S.C. § 189 (2000).

3

By letter dated May 31, 1996, BLM informed Occidental Chemical Corporation (Occidental), former lessee of the Federal sodium leases at issue, that the four subject leases were set to expire in the absence of renewal. Enclosed with the letter were sodium lease renewal forms, which contained the newly mandated diligent development provision as Section 14(c) of the leases' terms and conditions. The letter stated that BLM would deem Occidental's signature to be acceptance of the terms and conditions of the renewed leases. Occidental executed the leases, which were effective on August 1, 1996, and were set to expire on August 1, 2006.

On July 9, 2004, Occidental executed full assignments of its record title interest in the four sodium leases to Sesqui. On November 18, 2004, BLM approved the assignments, effective December 1, 2004, with an unchanged expiration date of August 1, 2006.

On February 3, 2006, Sesqui submitted to BLM an application for renewal of the leases. Admitting that it had not been producing sodium in paying quantities, but instead asserting that it was developing innovative sodium mining technology, Sesqui requested that BLM waive the diligence stipulation. Sesqui asserted that BLM should grant such a waiver because it had been in possession of the Federal leases for less than 2 years, that it was developing new sodium mining technology, that it had paid its rentals totaling $9,946 and royalties in an amount of $14,910 on its four leases, and that renewing the leases would be in the greater public good. Renewal Proposal at 2; Statement of Reasons (SOR) at 2.

By decision dated November 30, 2006, BLM rejected Sesqui's lease renewal application. BLM based its decision upon Section 14(c) of the leases, i.e., Attachment A to the Armstrong Memorandum. BLM explained that Section 14(c) was included in the 1996 lease renewals pursuant to the "direction" enunciated in the Armstrong Memorandum. BLM provided the following explanation for its decision:

> In your application you concede that the four sodium leases have not met the requirements of Sec. 14(c) of the 1996 renewal leases' terms and conditions and request that we waive the diligence stipulation because you are developing a new technology for recovering sodium resources. In your application for renewal you describe the new technology for developing sodium resources; however, the application does not indicate that the new technology is being used on the subject sodium leases. During the February 3, 2006, meeting you clarified that the proposed pilot project to demonstrate the new technology would not be located on those lands included in the four subject leases but on private lands located some distance away. You also indicated that no actual development activities have occurred on the lands included in the four leases.

4

IBLA 2007-72

. . . .

> Inasmuch as Federal sodium leases WYW09653, WYW081579, WYW77103, and WYW77104 have not met the diligence requirements of Sec. 14(c) of the leases' terms and conditions and no actual development of the four leases has occurred, the application to renew the leases is hereby rejected.

Decision at 2.

### *SESQUI'S ARGUMENTS ON APPEAL*

Sesqui marshals a number of arguments, procedural and substantive, in favor of reversing BLM's decision. Sesqui's principal contention is that BLM should have waived the terms of Section 14, given that Sesqui has "spent over $650,000 to develop its leases, including considerable outlays to design and patent its unique solution mining technology." SOR at 2. According to Sesqui, its revolutionary process "recovers a higher percentage of the federal sodium resource than conventional mining methods and allows mining of beds that are not economical to develop through traditional mining techniques due to the depth and narrowness of the beds." *Id.* at 3.

Sesqui makes the related argument that "BLM did not provide a rational basis for its Decision, but rather rejected Sesqui's application without any consideration of the appropriate legal standards or even a cursory discussion of the relevant factual circumstances." *Id.* at 10. Sesqui contends that BLM should have taken into account "the fact that Sesqui had consistently paid its rentals and royalties in lieu of production on its four lease parcels," and "that Sesqui had invested over $650,000 to develop the subject leases in the period immediately leading up to and including the 18 month period that Sesqui held these leases." *Id.* However, states Sesqui, "rather than considering the many factual circumstances that indicate Sesqui had in fact been diligent in developing its leases, BLM's Decision relied entirely on an impermissible new legal requirement which was not promulgated according to the proper legal procedures." *Id.* at 11.[4]

---

[4] In this connection, Sesqui argues that BLM's application of the Armstrong Memorandum amounts to "an attempt to create a new, binding legal requirement for federal sodium lessees," and "[a]s a de facto legislative rule, the Armstrong Memorandum is subject to the processes set forth in the APA [Administrative Procedure Act]." SOR at 8-9, *citing* 5 U.S.C. §§ 551(4), 553 (2000); *General Electric Co. v. EPA*, 290 F.3d 377, 383 (D.C. Cir. 2002); *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1021 n.11 (D.C. Cir. 2000). Sesqui contends that "BLM acted unlawfully
(continued...)

5

IBLA 2007-72

Sesqui asserts that it has "laid out a detailed lease development plan for its proposed sodium mining operations," involving application for all necessary permits, "followed by development and construction of a fully-integrated facility for producing a full range of sodium products," and has "demonstrated its commitment to developing its federal leases over the next 10-year period with a goal of producing sizeable quantities of commercial sodium products." *Id.* at 17-18. Sesqui states that "[f]ar from furthering the public interest in precluding lease speculations, BLM's decision to terminate these leases, if allowed to stand, will preclude development of the leases by perhaps the only lessee with the interest and technological ability to develop the underlying sodium reserves." *Id.* at 19.

## *ANALYSIS*

Assistant Secretary Armstrong, by his Memorandum dated February 22, 1996, directed that new and renewed sodium leases include the diligence provision. BLM perforce included the diligence provision in the subject sodium leases, renewed at the request of Occidental. As the assignee of the sodium leases, Sesqui possesses all rights or remedies that were available to Occidental, but also remains subject to the same requirements and restrictions that apply. *See Texaco Inc.*, 115 IBLA 369, 371 (1990). Occidental agreed to be bound by the lease terms, including the diligent production provision. Sesqui, as Occidental's successor-in-interest, is likewise bound thereby. *See Merrion Oil & Gas Corp.*, 169 IBLA 47, 56 (2006); *see also Goss Ventures, Inc.*, 143 IBLA 83, 84 (1998); *Prado Petroleum Co.*, 103 IBLA 247, 249 (1988).

There is nothing in Sesqui's arguments regarding its investments in new solution mining techniques, its costs of acquiring its leasehold interest, or its future intentions or plans that implies that BLM acted beyond its authority in enforcing the lease term, or that would compel BLM to waive the requirements of that term. It is undisputed that Sesqui has produced no sodium from its leases. While we are not unsympathetic to Sesqui's situation, we find no error in BLM's denial of Sesqui's request that the diligence provision be waived.

---

[4] (...continued)
both by including the diligence stipulation in Sesqui's four sodium leases and by rejecting Sesqui's application for renewal based solely on Sesqui's failure to satisfy the lease's diligence requirements." SOR at 9. However, given that Sesqui assumed the sodium leases with Section 14(c) included, as discussed *infra*, we need not address this argument.

6

IBLA 2007-72

Therefore, pursuant to the authority delegated to the Board of Land Appeals by the Secretary of the Interior, 43 C.F.R. § 4.1, the decision appealed from is affirmed.

*James F. Roberts*
James F. Roberts
Administrative Judge

I concur:

*Christina S. Kalavritinos*
Christina S. Kalavritinos
Administrative Judge

APPEARANCES:

| | |
|---|---|
| Richard L. Oberdorfer, Esq.<br>Andrew C. Emrich, Esq.<br>Holland & Hart, L.L.P.<br>2515 Warren Avenue, Suite 450<br>P.O. Box 1347<br>Cheyenne, WY 82003-1347 | **FAX: 307-778-8175** |
| Lance Wenger, Esq.<br>Office of the Regional Solicitor<br>U.S. Department of the Interior<br>755 Parfet St., Suite 151<br>Lakewood, CO 80215 | **FAX: 303-231-5363** |